Mark Beatty for Mr. Cruz. My client flew in from Hilo to be with us today. I'd like to reserve five minutes for rebuttal. The district court erred because it's a genuine issue of material fact whether this case is about retaliation or workplace violence. It's a fact that not wearing reflective vests is a violation of the OSHA general rule by defendant airline and a violation of the contract between defendant union and defendant airline. It's a fact that Mr. Cruz had recently transferred from the Honolulu branch where safety rules were followed to the Kona branch where safety rules were disdained. It is also fact that defendant airline's accusations are incredibly suspect. The first big accusation against Mr. Cruz was that he was reprimanded in March 2007 for missing one day in January 2007 when he had a doctor slip telling him to stay home because of an injury that he sustained while at work. That's very suspect. It's also a fact that the only two times that Mr. Cruz left work is on March 30, 2007 when Mr. Cruz objected to defendant airlines risking the lives of some 200 passengers. And that's how Mr. Cruz saw it. And on April 2nd when Mr. Cruz was confronted with the union was arbitrary when it failed to address the main point of retaliation as that the termination was because of retaliation. What was retaliation for? Mr. Cruz came from Oahu where they followed the rule books. They had two unions that had specialized training. There was never to be a crossover by the brown book or the people who brought in the planes by the The deposition of Mr. Figueroa, the union representative, verified this and he says we can't be doing this. We can't be having someone untrained bringing in an airplane not even wearing the necessary safety equipment. There's all sorts of things that could happen that an airline person needs to look at. For example, engine catch on fire. Was the person, the baggage carrier, looking to see if the engine was catching on fire? Was he doing things right? Wasn't wearing a vest, we know that for sure. And he said, you know, we can't be having that. And what they had a policy of doing is switching around union people for shifting purposes. I take it as a given for the purpose of this question that allowing the plane to be brought in by the other people in the other union was a violation. So I'm just taking that as a given. What evidence do we have that the action taken against your client was in retaliation for his having objected to that? And I think that goes back to the substance of the challenges against him. How staying home when you had a doctor's permission to go home is, that's silly. Now was that one because he didn't report in time? Or was it just the fact that, I read this earlier and I confess I've now slipped my mind. But I had something in mind. All you do is sit on your car and drive around. Come on in. Just come on in anyways. He says, no, the doctor said I'm not supposed to travel. But that wasn't the trigger of the discharge. Pardon? That was not the trigger of the discharge. Well, what that was though is showing this policy of being short-staffed and not staffing properly and using people that are injured or not qualified to do jobs. But we're more interested in the question of what do we know about retaliation? There's a bad motive for termination. Right. And the synchronon of any pretextual retaliation case is that the people with power are not just liars but good liars. Beck, I think, is an example for that. In Beck, they came and they said, oh, you know, she was cursing at me and she got fired. Well, in Beck, the person, the boss, used to have a relationship, just got promoted and used to have a romantic relationship. Yeah, yeah, no, that's that case. Let me talk about this case though. Right. Because as I'm trying to anticipate the arguments, I'm going to go from the other side now and I've seen it in the briefs and so on, so I want to make sure I give you a chance to respond. I'm not quite sure what the right word is, but your client appears to be rather hot-headed. He doesn't say, you know, I object, let's talk this over. No, he says, I'm out of here, I'm going home, and he uses some bad words. I mean, at what point does Hawaiian Airlines get to say, you know, this is not an employee that we want, because he doesn't respond appropriately to what may be legitimate things within the problems within the workplace. But we can't have somebody, when he's got an objection, he swears at people and says, I'm out of here, I'm going home, and I didn't say the words that he said. So why is that retaliation instead of an appropriate reaction by the employer? And one line of argumentation, which I believe is very persuasive, is that they had other people who actually got into fistfights or grabbing security guards by the neck, and they didn't get fired, they got a mere reprimand. Mr. Figueroa said, yeah, there's that offensive language that's happening that happens at the workplace. That's an admitted, there's that language happening. Okay, he used an inappropriate word for emphasis. More than that, he left. That is somewhat unusual. More than once, twice, right? Well, but the two times are this one time when they're having someone who is unqualified do his job. And the other time was when he was handed his... In a rational sense. In a rational sense, my client feels that he's responsible for the safety of the people on that plane. If they're going to have a policy that promotes unsafe actions, like someone else that's not qualified doing his job, he doesn't want to be responsible for that. What he was told to do was to go and eat. So you had two people that are baggage carriers chalking the plane and putting it in, doing whatever. And he was supposed, that was what he was supposed to do. The legal question is this. Can we infer from the fact that an employer thought that was inappropriate behavior, especially when he did it again the next day or very soon thereafter, and they didn't want this employee around, that they were firing him for some retaliatory purpose? How? Well, again, the persuasive is that you look at how they dealt with other employees. This is like the only employee that they've ever fired. Mr. Cruz over here. He's the only employee they've ever fired. When I was deposing all the defendants, they couldn't remember any other employee that wasn't fired. They remembered that... Well, you know, let's hear from the other side. We've taken you past where you wanted to stop, but you still have some time to respond. So let's hear from the other side, and then we'll make sure that you get a chance to respond. Thank you. Good morning. May it please the court. William Mota on behalf of Hawaiian Airlines and the individual appellees. I'd like to reserve or to set aside five minutes of the appellee's time for the union to present their case. Based on the plaintiff's or the appellant's arguments today, it seems like their main intent is to relitigate the case, the determination what wasn't fair. With the exception of count six, which is their retaliation claim under state law and under state common law, all of the claims that the plaintiff has asserted are of the type that have been generally and routinely dismissed by the courts on preemption grounds. So I won't focus on those unless the court has any specific questions about them. Well, I personally... Well, you don't care whether we get rid of my preemption grounds or another grounds, I take it. That's true. And for each of the claims, including the claims that I just mentioned, there are independent state... I'm probably impressed with the preemption claims. From what I was thinking about myself, I don't think they're preempted. So if you're going to win, you're going to win on the merits on that. Then I'll probably skip those. And on substantive grounds, I believe that all the claims are subject to dismissal as well. The interesting issue on count six was that the Norris v. Hawaiian Airlines case addresses the preemption or the preemptive effect of the RLA on whistleblower claims and claims of common law retaliation. I believe that preemption does apply in this case because in this particular case, we're not talking about a violation of state law, something that was independent of the contract, but as Mr. Baby said in his portion of the argument, they're talking about some kind of perceived violation of the union contracts. That falls within the scope, I think. Here's the story told sympathetically from Mr. Cruz's standpoint. How long had he been over there? How long had he been at Kona from the time he'd been over at Honolulu? On this particular stint, he'd been there, I forget, a couple of years maybe. He's a fairly known employee. He comes over. Things aren't done the way he thinks they ought to be done. He has two episodes. I don't know what the right word is. He's kind of hot-headed. He has a hissy fit, walks off the job. Clearly shouldn't have done that. Yet he says, you know, the people get in fist fights. The people do all kinds of things, and you don't fire them. You fired me. What's the difference? The difference is that I was pointing out things that you shouldn't have been doing. Why is that summary judgment against him instead of going to trial? Getting to the merits of his retaliation claim, there really wasn't any protected activity. If you take a look at the incident statement that he prepared shortly after the day that's the subject of his claim, he didn't mention any kind of report of some kind of violation of law or even of the contract on the part of the company. He was upset that he didn't have to have lunch, that he had to deal directly with a customer instead of having a customer service agent. Well, he did claim there were some unsafe practices, though, right? He didn't claim that to the company. He has alleged that after the fact. Who did he make those complaints to? Not to any of the company people. He's made it into litigation. But didn't he say in his deposition there was no legal violation? Right, and he said that there was no violation of law. I thought that the union contract was violated. So really there was no protected activity in terms of reporting a legal violation, and part of his argument against the union is that the union didn't make these kind of arguments, that he was an advocate for public safety or an advocate for the law. He's claimed that the union dropped that. If you take a look at the incident report that he prepared at the bases for the company's termination of his employment, there's no mention at all of the things that he claims gives rise to this retaliation claim. The company terminated him for the reasons that you've already discussed, none of which had anything to do with the retaliation claims or the allegations that he has made after the fact regarding violations of law. Okay, thank you. All right. May it please the Court, my name is Elizabeth Romer. I represent the Appellee International Association of Machinists, Local Lodge 1979. Mr. Cruz was terminated by the company after he admitted that he swore at the company, or he swore over the company radio over a disputed lunch break. The fact that the company found that this was witnessed by other passengers and other employees, that he admitted that he left his shift on more than one occasion, and the admission of his co-worker's signed statements that they were afraid of him and they thought that he was a walking time bomb and was unpredictable. He had also failed, he also had a prior written warning for failing to appear at work as scheduled. His argument against the union is that the union failed to, breached its duty of fair representation in failing to get him his job back, despite the fact that the record shows that the union represented him at his termination grievance, that it grieved his termination through the procedures outlined in the collective bargaining agreement, and it only decided not to pursue arbitration after its reasonable belief and determination that arbitration would be futile. We ask the court to affirm the district court's decision that Mr. Cruz has not shown that the union violated its duty of fair representation when he failed to present any evidence that the union's conduct was discriminatory or in bad faith. Here, this is a hybrid claim. In order to succeed on his claim, Mr. Cruz must prove, one, that the company violated the collective bargaining agreement in terminating him, and two, that the union breached its duty of fair representation in the manner in which it handled his termination hearing and grievance. Here, Mr. Cruz cannot show that the union violated its duty of fair representation. In matters involving the union's judgment, such as whether and to what extent to pursue a particular grievance, Mr. Cruz can only prevail on showing that the union's conduct was discriminatory or in bad faith. Discrimination has been defined by the Supreme Court as conduct that is intense, severe, and unrelated to legitimate union objectives, and bad faith requires, quote, substantial evidence of fraud, deceitful actions, or dishonest conduct on behalf of the union. Mr. Cruz does not allege any facts that would indicate that the union has acted in a discriminatory manner or with bad faith. Indeed, the record shows that the union fully agreed to his termination and represented him at his termination hearing. He was represented by a union representative who was a 10-year elected committee chairman. He was a 19-year member of the union. And Mr. Cruz testified, despite saying in his briefs that the union was unprepared, that he met with the union prior to his hearing. He submitted a written statement to the union prior to the hearing. This was submitted to evidence at the hearing. He spoke on his own behalf at the hearing, and he doesn't know what the union could have done differently. My understanding of at least the court of his complaint against the union is that there were contractual violations going on and that the union did not raise them as such. That appears to be what he is arguing now before this court. But these after-the-fact complaints, there's no evidence that would indicate that he raised them at the time and that he ever presented them to the union. He doesn't When he says the problem is the people at the back of the challenge were doing his job, that is essentially an assertion of a violation of the contract. He never made those allegations below. And when you look at his written statement and the statements that, the representations at the hearing itself is he never made these comments. He never mentioned at the hearing that he was complaining somehow that this was a violation of the contract. And aside from that, what he's actually arguing, as he concedes in his reply brief on page 14 is, quote, Cruz's argument, however, is not that he knew and complained, but the union should have known and argued the point. But he points to no legal authority that would indicate the union had any kind of affirmative responsibility. And even if it did, even arguing that it did, that this somehow would have impacted the outcome of this case or somehow justified his conduct in how he handled this case. He concedes that he never filed a grievance over any contractual disputes. And he doesn't justify how, even if he was arguing that this somehow had to do with a violation of the contract, that this somehow justified his behavior in admittedly swearing over company radio at his supervisor and walking off the job on multiple occasions. And like I said, even if we concede the fact that this was somehow a complaint, he fails to show how his conduct would justify his behavior. In addition to fully representing the union or Mr. Cruz at his termination hearing, and Mr. Cruz never addresses this in his briefs below or before this court, this matter was grieved to step three in the procedures outlined in the collective bargaining agreement, where it was handled by the district law just as an intermediate body within the union. It was appealed to that level in accordance with the procedures outlined in the collective bargaining agreement. It was handled by the union, fully represented, and met with the company on multiple occasions in an attempt to get his termination reduced to suspension without any success. And very briefly, as for Mr. Cruz's assertions that he was treated differently than other employees, when you look at the evidence that he supports, its statements made by the union representative, the cases, frankly, aside from the fact that there's no discriminatory intent alleged, those cases, the material facts differ considerably. The individuals all apologized for the behavior. They went through anger management. And the facts of those cases are different. Okay. Your time has just expired. Do you want to sum up? I just want to ask the court that it affirmed the discourse decision below, that the union, the finding that the union did not reach its duty of fair representation in representing Mr. Cruz. Okay. Thank you. Now you've got a minute left on the clock. Why don't we give you two minutes and we'll go from there. It's disputed whether Mr. Cruz had permission to go. He said, I'm going home. Okay, go then, Mike Brown. He talked to another person. They were not supervisors. There are no managers there. They're a lead line service. They're the leads. They were not the supervisors. They were managers. He's only been there ten months when all of this happened. I agree that 98% of union law, I call it union law hell, my client loses. But part of bad faith is arbitrary. We do not have to prove any malice. We just have to prove an unexcused failure. The conversation between Mr. Figuerera, the union representative, and my client was less than ten minutes. No questions were asked. No follow-up questions were asked. All you need to do is ask one question. Why was it that you were upset or that you were terrified that someone else was doing your job? Why were you terrified that someone else was doing your job? One question. And he has no excuse for not asking that one question. I think Peters is very good precedent. It's unexplained. Thank you. Okay, thank you very much. Thank both sides for your arguments. Case of Cruz v. Hawaiian Airlines is now submitted for decision.
judges: Tashima, Fletcher W. , Berzon